IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**KENNETH GREGORY WILLIAMS,**

        Plaintiff,                                        No. 3:10-cv-730-SI

              v.                                OPINION AND ORDER

**OREGON DEPARTMENT OF CORRECTIONS,**
**DR. STEVE SHELTON, M.D.,** *et al.*,

        Defendants.


Kenneth Gregory Williams
SID # 420297
2500 Westgate
Pendleton, Oregon 97801
      *Pro se*

John R. Kroger
Attorney General
Justin E. Kidd
Andrew Hallman
Assistant Attorneys General
Department of Justice
1162 Court Street NE
Salem, Oregon 97301
      Attorneys for defendants Oregon Department of Corrections,
      Becker, Degner, Gillies, Hansen, Lytle, Randall, Shelton, Snider,
      Stevens, and Vargo

Henry H. Lazenby, Jr.
County Attorney
Carlos J. Calandriello
Assistant County Attorney
501 S.E. Hawthorne Blvd., Suite 500
Portland, Oregon 97214
     Attorneys for defendants Multnomah County Sheriff's
     Office and Ersson

**SIMON, District Judge:**

Plaintiff, Kenneth Williams ("Williams" or "Plaintiff"), is an African-American inmate of Oregon State Penitentiary ("OSP"). He has filed this civil rights lawsuit under 42 U.S.C. §1983, alleging violations of the First, Eighth, and Fourteenth Amendments of the United States Constitution and common law negligence against Defendant Oregon Department of Corrections ("ODOC"), Defendant Multnomah County Sheriff Department ("Sheriff's Department"), and various individual Defendants associated with ODOC or the Sheriff's Department. Plaintiff alleges that Defendants were deliberately indifferent to Plaintiff's serious medical needs by failing to provide adequate tests, diagnosis, and treatment for his claimed piriformis syndrome,[1] a failure that Plaintiff alleges was racially motivated. The individual Defendants allegedly associated with ODOC are Steven Shelton, medical director of ODOC; Greg Lytle, M.D., a physician employed at Two Rivers Correctional Institution ("TRCI"); Steve Gunderson, M.D., a physician employed at TRCI; S. Snider, M.D., a physician employed at ODOC Intake Center, also known as Coffee Creek Correctional Institution ("CCCI"); Ted Randall, OSP Health

---

[1] Piriformis syndrome is a condition marked by pain in the hip and buttock that radiates up into the lower back and down the leg. *Taber's Cyclopedia Medical Dictionary* 1790 (Donald Venes, M.D., ed., 2009).

OPINION AND ORDER, Page 2

Service Manager; OSP physicians John Vargo, D.O., Ole Hansen, M.D.[2] and Dave Degner, M.D.; Jennifer Stevens, a registered nurse at OSP; and David Gillies, a grievance coordinator at OSP (collectively, "the State Defendants").[3] Individual Defendant Ole Ersson, M.D. is a physician employed by the Sheriff's Department (collectively, "the County Defendants").

The motions currently before the court include motions for summary judgment filed by the County Defendants (Doc. # 67) and the State Defendants (Doc. # 122)[4] and Plaintiff's motion to strike numerous pages of medical records (Doc. # 152) that are attached to the Declaration of Barbara Bandy (Doc. #124). In addition, on April 18, 2011, while the County Defendants' motion for summary judgment was pending, Plaintiff filed a motion to amend the complaint (Doc. # 89). The Proposed Amended Complaint differs from the original complaint in that it adds additional factual allegations to the Eighth Amendment claim against County Defendant Ole Ersson, M.D. and seeks additional damages based on Dr. Ersson's failure to

---

[2]Defendant Ole Hansen, M.D. states in a declaration that, based on a review of Plaintiff's medical records, and to the best of his recollection, he has never seen Plaintiff for low back pain issues. Decl. of Ole Hansen ¶ 2 (Doc. # 129).

[3] Defendant John Vargo, D.O. stated in a declaration that, based on a review of Plaintiff's medical records, and to the best of his recollection, he has never seen Plaintiff for low back pain issues. Decl. of John M. Vargo, D.O. ¶ 2 (Doc. # 128).  In the Supplemental Declaration of Steven Shelton, M.D. (Doc. # 162), State Defendants acknowledge that Dr. Vargo's statement is incorrect, explaining that the statement was made after Doctors Vargo, Hanson, and Shelton, along with former counsel Aaron Sprague, reviewed Plaintiff's medical records for the time period relevant to the complaint, 2008 through 2010. Shelton Supp. Decl. ¶4. Plaintiff correctly states that he was seen by Dr. Vargo in 2002 for low back pain. According to Dr. Shelton's Supplemental Declaration, Dr. Vargo did not review Plaintiff's records covering the years before 2008 in preparing his responses and consequently failed to note the 2002 consultation. *Id.* at ¶¶ 4-6. There is no evidence in the record to suggest any intentional misrepresentation.

[4] A previous motion for summary judgment (Doc. # 63) was withdrawn by the State Defendants (Doc. # 84) on April 12, 2011, and the current motion was filed on August 11, 2011 (Doc. # 122).

diagnose nerve root compression, for which Plaintiff had surgery on his lumbar spine on March 15, 2011. Plaintiff also filed a motion for an audio-visual or telephone conference (Doc. # 159). For the reasons that follow, the court grants the motions for summary judgment (Doc. #67 and Doc. # 122) ; grants in part and denies in part Plaintiff's motion to strike (Doc. # 152); denies Plaintiff's motion to amend the complaint (Doc. #89); and denies Plaintiff's motion for an audio-visual or telephone conference (Doc. #159).

# I.  BACKGROUND

## A.    Plaintiff's Allegations of Inadequate Medical Treatment

Plaintiff alleges that while incarcerated at TRCI between July 2005 and January 2008, he complained repeatedly to Doctors Gunderson and Lytle about extreme pain in his lower buttocks, but they did no more than take x-rays and provide generic pain medication. Compl. ¶ 19. Plaintiff further alleges that while incarcerated at the Oregon State Correctional Institution ("OSCI") between January 2008 and May 2008, he complained repeatedly to a John Doe physician at OSCI about "excruciating pain in the lower part of [Plaintiff's] buttocks," and the response was, again, x-rays and "inadequate generic pain medications, naproxin and ketaprofin [naproxen and ketaprofen]." *Id.* at ¶ 20. Between July 2008 and December 2008, Plaintiff alleges, he complained to Dr. Ersson about pain and still received only naproxen. *Id.* at ¶ 21. Dr. Ersson x-rayed Plaintiff's hips and diagnosed him with arthritis, prescribing the "inadequate, generic anti-inflammatory pills" salsalate and tramadol, and muscle relaxant Flexeril (cyclobenzaprine). *Id.* at ¶ 22. Plaintiff was transferred to CCCI with three medications prescribed for pain: salsalate, naproxen, and Flexeril. These medications were allegedly confiscated by CCCI medical staff, except for a few naproxen pills. Defendant Snider and other

physicians then discontinued all pain medication. *Id.* at ¶ 24.

On February 1, 2009, Plaintiff was transferred to OSP. Doctors Hansen, Vargo, Degner, and Becker then allegedly told Plaintiff there was nothing wrong with his hip joints and that his back condition was not serious enough to warrant surgery. Despite Plaintiff's continuing complaints and requests for another opinion, these defendants continued to prescribe anti-inflammatories, which caused numerous side effects. *Id.* at ¶¶ 25, 26.

On February 11, 2010, Plaintiff filed a grievance against Doctors Hansan, Degner, Vargo, and Becker, complaining of their failure to provide adequate tests, diagnoses, and treatment for Plaintiff's suspected piriformus syndrome and his excruciating pain. Plaintiff also asked for a second opinion from an independent orthopedist or neurologist and for access to "advance technology, a MRI, CT, EMG, neuro-imaging, FAIR or any other scientific tests necessary for an accurate diagnosis and treatment for his intense and persistent pain." *Id.* at ¶28.

On March 10, 2010, Dr. Hansen told Plaintiff he would not be allowed to meet with a specialist or have the requested tests. *Id.* at ¶ 29. Plaintiff's grievance was not responded to until March 30, 2010, by Jennifer Stevens, R.N. Plaintiff alleges that nurse Stevens disregarded his allegations, explaining merely that she had scheduled Plaintiff to meet with Dr. Vargo for a second opinion. *Id.* at ¶ 31. On April 8, 2010, Plaintiff was seen by orthopedist Dr. Becker, who told Plaintiff that he did not have any significant back or hip problem and would not be given an MRI or other test. *Id.* at ¶ 32.

On April 9, 2010, Plaintiff filed a grievance against Dr. Becker for sexual harassment, based on allegedly sexually offensive comments Dr. Becker had made. On April 14, 2010, Grievance Coordinator Gillies refused to process the grievance on the ground that it was the

OPINION AND ORDER, Page 5

same grievance as the one Plaintiff had filed on February 11, 2010. *Id.* at ¶ 34. On April 21, 2010, Plaintiff filed a grievance appeal attempting to clarify the second grievance, but on April 23, 2010, Gillies refused to process the appeal. *Id.* at ¶ 35. On April 27, 2010, Plaintiff filed a second level appeal, which Gillies refused to process. *Id.* at ¶¶ 37-38. Steve Shelton responded to Plaintiff's second level grievance appeal by allegedly "pretending the grievance was concerning a back problem when it was actually concerning the refusal to provide adequate scientific tests to determine the cause of excruciating and persistent pain in the lower part of plaintiff's buttocks, legs and feet (A SUSPECTED PIRIFORMUS SYNDROME)." *Id.* at ¶ 40.

## B.    Plaintiff's Medical History

Plaintiff is 56 years old. Decl. Thad Stanford, M.D. ¶ 5. An x-ray of his lumbar spine taken on February 12, 1997, showed degenerative disc disease at one intervertebral level (L5-S1) and mild facet joint arthritis at the same level. *Id.* at ¶ 7.

Plaintiff had another x-ray of his lumbar spine taken on April 22, 2002, while in ODOC custody. *Id.* at ¶ 8. This x-ray showed "quite severe degenerative disc disease at the level of L5-S1." *Id.*; Decl. Barbara Bandy, Ex. 1, p. 331. ODOC sent Plaintiff for another lumbar spine x-ray on August 31, 2004. This x-ray showed "moderately severe degenerative disc disease involving the L5-S1 interspace." *Id.* at ¶ 9; Bandy Decl. at 330. According to Dr. Stanford, these x-ray findings are "consistent with typical aging and degenerative changes in the lower back for a man of the Plaintiff's age and activity" and are "typical findings and explanation for the type of low back pains and complaints that the Plaintiff has." In Dr. Stanford's opinion, nothing about the x-ray findings "suggests impingement on the nerve roots located in the lumbar spine or other neurological problems" or "surgery or treatment plans other than what ODOC health services

has recommended for the Plaintiff." Stanford Decl. ¶ 10.

The County Defendants have submitted a Declaration from Dr. Ersson based on his personal knowledge and his review of Plaintiff's 2008 medical records. In that declaration, Dr. Ersson states that during Plaintiff's 2008 incarceration in Multnomah County custody, Plaintiff first reported pain and discomfort in his back and buttocks on May 20, 2008, when he told a nurse during his intake interview that he suffered from hip spasms. Ersson Decl. ¶ 8, Ex. 1. On May 23, 2008, Plaintiff was seen by a nurse and assigned to a lower bunk and the lower tier of the jail. The nurse scheduled an appointment with Dr. Ersson for June 4, 2008, which Plaintiff missed because he was not in custody on that date. *Id.* at ¶¶ 10, 11. On June 28, 2008, Plaintiff was seen by a nurse, whom he told he was experiencing back spasms. The nurse ordered 600 mg. of ibuprofen and scheduled a physician consult, but Plaintiff was not in custody on the day scheduled for that examination. *Id.* at ¶¶ 12, 14, Ex. 5.

When Plaintiff returned to jail on July 23, 2008, he again complained of hip spasms and reported having a deteriorated disc. He was assigned to a lower bunk on the lower tier of the jail. *Id.* at ¶ 15, Ex. 6. Plaintiff saw a nurse on July 25, 2008, who scheduled an appointment with James Bane, M.D. for August 1, 2008; the nurse also ordered 600 mg. of ibuprofen three times a day. *Id.* at ¶ 16, ex. 7, 8. Dr. Bane noted upon examination that Plaintiff had full range of motion in his hips and ordered that Plaintiff continue with ibuprofen and return to the clinic in one to two weeks. *Id.* at ¶ 17, Ex. 9. Plaintiff saw Dr. Bane again on August 18, 2008, with complaints of pain down both of his legs. Dr. Bane ordered x-rays of Plaintiff's lumbosacral spine and pelvis and prescribed tramadol, a prescription medication commonly used to treat moderate to severe back pain. *Id.* at ¶¶ 18, 21, Ex. 10.

OPINION AND ORDER, Page 7

On August 21, 2008, Robert Nance, M.D., a radiologist, reviewed the x-rays and diagnosed Plaintiff with degenerative disc disease at L4-5 and L5-S1 with associated degenerative joint disease in both areas, but more pronounced at the L5-S1 vertebral junction. Dr. Nance also noted that the x-rays showed trace arthritis of the left hip and mild-to-trace arthritis of the right hip. *Id.* at ¶ 19, Ex. 11.

Dr. Ersson saw Plaintiff for the first time on September 2, 2008. Based on the findings of Dr. Nance, Dr. Ersson increased the dosage of tramadol to 100 mg. three times a day and also prescribed 500 mg. of naproxen, a medication used for the reduction of pain, inflammation, and stiffness associated with degenerative conditions of bones and joints such as arthritis. *Id.* at ¶¶ 20, 22, Ex. 12. On September 3, 2008, Dr. Ersson discontinued naproxen and prescribed salsalate for pain relief. On October 1, 2008, Dr. Ersson discontinued salsalate because it proved ineffective and prescribed Flexeril, a muscle relaxant. *Id.* ¶¶ 24, 25. Dr. Ersson states that as a general practitioner board-certified in family medicine, his reliance on a radiologist's findings and diagnosis obtained from x-rays was "a customary and accepted method of treatment in the community" when treating lower back ailments and other musculoskeletal disorders and injuries. *Id.* at ¶ 23.

Dr. Ersson states that Plaintiff was never prescribed experimental medications: all the medications Plaintiff received "are commonly prescribed by competent and prudent physicians in the community to treat the pain associated with degenerative conditions of the spine like those suffered by Mr. Williams." *Id.* at ¶ 26. Further, the medical records Dr. Ersson reviewed "provide no indication that Mr. Williams suffered any nerve damage or loss of bowel or bladder control as a result of the medications prescribed to him" and no indication of nerve root

impingement or neurological problems associated with the degenerative changes in Plaintiff's lumbosacral spine. *Id.* at ¶¶ 27, 28. Dr. Ersson states that the degenerative conditions diagnosed by Dr. Nance are "consistent with x-ray examinations taken of Mr. Williams's lower back in February 1997, April 2002, and August 2004." *Id.* ¶ 29.

On June 10, 2009, Plaintiff saw Jerry Becker, M.D., an orthopedic surgeon, for complaints of low back pain. Dr. Becker diagnosed probable lumbar spondylosis,[5] without evidence of nerve root compression at the disc. He ordered a lumbar x-ray and a follow-up visit in six weeks. *Id.* at ¶ 12; Bandy Decl. Ex. 1 at 405, 466. Plaintiff had another lumbar x-ray on June 12, 2009, which showed "degenerative disc changes at L5-S1," and "[m]ilder degenerative changes ... anteriorly above this level." Stanford Decl. ¶ 14; Bandy Decl., Ex. 1 at 325. Plaintiff saw Dr. Becker again on July 29, 2009. Dr. Becker diagnosed lumbar spondylosis and ordered extra pillows for Plaintiff. Stanford Decl. ¶ 15; Bandy Decl. Ex. 1 pp. 32, 158. Plaintiff saw Dr. Becker again on November 19, 2009. Dr. Becker found no objective signs of nerve root impingement or other neurological issues. He prescribed medication, but did not think that an MRI or back surgery was indicated. Stanford Decl. ¶ 16; Bandy Decl. Ex. 1 at 30, 150.

The next documented complaint of Plaintiff's back pain was in August 2010, when Plaintiff was seen by an ODOC health care provider. Chart notes indicate that Plaintiff was moving without difficulty or grimacing. The diagnosis was chronic, non-radicular, low back pain. No objective signs of neurological problems were observed. Stanford Decl. ¶ 17; Bandy Decl. Ex. 1 at 139.

---

[5] Spondylosis is a medical term describing degenerative changes to the spine. Stanford Decl. ¶ 13. It typically involves drying out of the intervertebral discs and the appearance of bony spurs (osteophytes) on the vertebrae. *Id.*

OPINION AND ORDER, Page 9

Plaintiff saw Grant Van Houten, M.D. on September 15, 2010, for back pain. Stanton Decl. ¶ 18; Bandy Decl. Ex. 1 at 136. Dr. Van Houten reviewed x-rays and examined Plaintiff. He wrote that Plaintiff's back pain had been increasing over the past six months. Dr. Van Houten diagnosed degenerative joint disease of the lumbar spine, ordered a follow-up x-ray, and prescribed naproxen for six months. *Id.* X-rays taken on September 20, 2010, showed degenerative disc changes at L5-S1 without fracture or subluxation (slippage) and no evidence of spondylosis. When these x-rays were compared to Plaintiff's 2009 x-rays, they revealed slight progression at the L5-S1 interspace. Stanford Decl. ¶ 19; Bandy Decl. Ex. 1 at 285. Based on the progression and Plaintiff's report of increased back pain, Dr. Van Houten requested an MRI of Plaintiff's lower back. Decl. of Grant Van Houten ¶ 9. The MRI was done on October 18, 2010, and showed that the discs at two levels in Plaintiff's lower back were pushing on the nerve roots, and that there was subluxation of the vertebra at one level. Stanford Decl. ¶ 20. As a result, Plaintiff received a neurosurgical consultation. Bandy Decl. Ex. 1 at 315-20. On March 15, 2011, Plaintiff then underwent spinal fusion surgery. Stanford Decl. ¶ 21; Bandy Decl. Ex. 1 at 309-11. Plaintiff made a full recovery from the surgery. Stanford Decl. ¶ 22.

## II. STANDARDS

A party is entitled to summary judgment if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in favor of the nonmoving party. *See, e.g., Crowe v. County of San Diego,* 608 F.3d 406, 427 (9th Cir. 2010).

## III. DISCUSSION

In their motion for summary judgment, the State Defendants contend that: (1) Plaintiff's claims based on conduct occurring before June 17, 2008, are barred by the applicable two-year statute of limitations; (2) both ODOC and the individual State Defendants are immune from liability under the Eleventh Amendment to the United States Constitution; and (3) the State Defendants are entitled to qualified immunity. In addition, all Defendants contend that: (1) Plaintiff has failed to establish claims for violation of the Eighth Amendment to the United States Constitution and equal protection; (2) Plaintiff has failed to establish a claim for negligence; and (3) Plaintiff cannot assert a constitutional claim related to grievance procedures. The court concludes that all Defendants are entitled to summary judgment.

### A.    Plaintiff's Claims Based on Conduct Before June 17, 2008, Are Barred by the Applicable Statutes of Limitation.

Because 42 U.S.C. § 1983 and most related federal civil rights statutes have no independent statute of limitations, the limitations period for commencement of § 1983 actions must be borrowed from state law. *Wallace v. Kato,* 549 U.S. 384, 387 (2007). Section 1983 claims are characterized as personal injury actions for statute of limitations purposes. *Id.* Oregon's general tort statute provides a two-year statute of limitations. Or. Rev. Stat. § 12.110(1). Thus, the applicable statute of limitations both for Plaintiff's claims under 42 U.S.C. § 1983 and for Plaintiff's negligence claim is two years. *See, e.g., Sain v. City of Bend,* 309 F.3d 1134, 1136 (9th Cir. 2002)**;** *Shepard v. City of Portland***,** 2011 WL 5282607 (D. Or. Oct. 31, 2011) * 14.

The complaint in this case was filed on June 17, 2010. The State Defendants assert that all claims based on conduct that occurred before June 17, 2008, are outside of the statute of

OPINION AND ORDER, Page 11

limitations. I agree. Plaintiff's claims against defendants Lytle and Gunderson are based on

conduct that occurred while Plaintiff was incarcerated at TRCI between July 2005 and January

2008, which is more than two years before the filing of this action. Accordingly, the claims

against Lytle and Gunderson are dismissed with prejudice.

**B.      ODOC Is Immune from Liability under the Eleventh Amendment, Although the Individual State Defendants Are Not Immune.**

The State Defendants argue that ODOC, a state agency, is immune from liability under

the Eleventh Amendment. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any
> suit in law or equity, commenced or prosecuted against one of the United States
> by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const., Amend. XI. Although the Eleventh Amendment does not explicitly prohibit an

action in federal court against a state by one of the state's own citizens, the Supreme Court has

construed the Eleventh Amendment as barring such suits. *See Welch v. Texas Highways & Pub.*

*Transp. Dep't,* 483 U.S. 468, 472 (1987); *Micomonaco v. Washington*, 45 F.3d 316, 319 (9th Cir.

1995). In addition, the Eleventh Amendment bars actions not only against the states themselves,

but also against state agents and instrumentalities. *Regents of the Univ. of Calif. v. Doe,* 519 U.S.

425, 429 (1997) ("[T]he reference to actions 'against one of the United States' encompasses not

only actions in which a State is actually named as the defendant, but also certain actions against

state agents and state instrumentalities.") Whether a particular state entity is an agent or

instrumentality of the state, and therefore "one of the United States," within the meaning of the

Eleventh Amendment is a question of federal law. *Id.* Answering that question, however,

requires the court to consider the provisions of state law that "define the agency's character." *Id.*

This is a case-specific inquiry that turns on whether "the state is the real, substantial party in

OPINION AND ORDER, Page 12

interest." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89,m 101 (1984). ODOC is such an agent or instrumentality of the state of Oregon, and therefore immune from suit under the Eleventh Amendment. *Gauthier v. Eastern Oregon Correctional Institution,* 2004 WL 2260670 *4 (D. Or. Oct. 7, 2004).

In addition, an action under 42 U.S.C. § 1983 brought against a government official in his or her official capacity generally represents "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165 (1985). An official capacity suit is, "in all respects other than name," to be treated as a suit against the governmental entity; it is *not* a suit against the official personally, for the real party in interest is the entity. *Id.* at 166.

The complaint, however, does not specify whether the individual State Defendants are sued in their official or personal capacities. Because a plaintiff can establish *personal* liability in a § 1983 action simply by showing that the official acted under color of state law in deprivation of a federal right, *Hafer v. Melo,* 502 U.S. 21, 25 (1991), the court presumes that officials are necessarily sued in their personal capacities where those officials are named in a complaint, even if the complaint does not explicitly mention the capacity in which they are sued. *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999). *See also Alexander v. Internal Revenue Service,* 2009 WL 2830174 * 2 (D. Or. June 23, 2009) (where plaintiff seeks damages against a state official, a strong presumption is created in favor of a personal capacity suit because an official capacity suit for damages would be barred, *citing Romano,* 169 F.3d at 1186). The court concludes that the action against ODOC is barred by the Eleventh Amendment, but that the action against the individual State Defendants is not.

OPINION AND ORDER, Page 13

**C.    Plaintiff Has Not Established a Genuine Issue of Fact Sufficient to Support His Eighth Amendment Claim of Deliberate Indifference.**

In order to succeed on a claim under 42 U.S.C. § 1983 for inadequate medical treatment, Plaintiff must demonstrate that a health care professional showed "deliberate indifference to his serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference is a "high legal standard." *Toguchi v. Chung,* 391 F.3d 1051, 1060 (9th Cir. 2004). A showing of medical malpractice, negligence, or even gross negligence is insufficient to establish a constitutional violation. *Id.*

A determination of "deliberate indifference" involves consideration of two elements: (1) the seriousness of the prisoner's medical need; and (2) the nature of the defendant's response to the prisoner's need. *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997) (*en banc*). The prisoner "must satisfy both the objective and subjective components" of this two-part test. *Toguchi,* 391 F.3d at 1057. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). A serious medical need exists if the failure to treat the prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *McGuckin,* 974 F.2d at 1059, *quoting Estelle,* 429 U.S. at 104.

The second element is necessarily an "inquiry into a prison official's state of mind." *Farmer v. Brennan,* 511 U.S. 825, 838 (1994). The element is satisfied by showing: (1) a purposeful act or failure to respond to a prisoner's pain or possible medical need; and (2) harm caused by the indifference. *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006). *See, e.g., Lolli v.*

OPINION AND ORDER, Page 14

*County of Orange,* 351 F.3d 410, 421 (9ᵗʰ Cir. 2003) (officers' indifference to Lolli's extreme

behavior, his "obviously sickly appearance," and his statements that he needed food because he

was a diabetic could "easily lead a jury to find that the officers consciously disregarded a serious

risk to Lolli's health" by failing to provide him with the food he had requested); *Ortiz v. City of

Imperial,* 884 F.2d 1312, (9ᵗʰ Cir. 1989) (evidence that doctor and nurses knew of prisoner's

head injury but disregarded evidence of complications to which they had been specifically

alerted and, without examination, prescribed sedatives that were contraindicated was sufficient

to survive summary judgment on Eighth Amendment deliberate indifference claim).

    Plaintiff's claim that Defendants failed to order diagnostic testing beyond x-rays for his

back pain, thereby failing to discover piriformus syndrome and overlooking the eventual

diagnosis of nerve root impingement, does not meet the deliberate indifference standard. *Estelle*

is directly on point. In that case, the Supreme Court rejected a prisoner's Eighth Amendment

claim that prison doctors should have done more by way of diagnosis and treatment after he

injured his back, emphasizing that a "complaint that a physician has been negligent in

diagnosing or treating a medical condition does not state a valid claim of medical mistreatment

under the Eighth  Amendment claim." 429 U.S. at 106. The Court observed that "the question

whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a

classic example of a matter for medical judgment" and "does not represent cruel and unusual

punishment." 429 U.S. at 107.

    Moreover, to prevail on a claim involving choices between alternative courses of

treatment, a prisoner must show that the chosen course of treatment was "medically unacceptable

under the circumstances" and was chosen "in conscious disregard of an excessive risk to the

OPINION AND ORDER, Page 15

prisoner's health." *Toguchi,* 391 F.3d at 1058 , *quoting Jackson v. McIntosh,* 90 F.3d 330, 332 (9th Cir. 1996). Although Plaintiff alleges that the anti-inflammatory medications prescribed for him caused unwanted side effects and were inadequate to relieve his pain, he has not presented any evidence that the treatment given for his back pain was medically unacceptable or that it was chosen in conscious disregard of his health. As this court observed in *Young v. Nooth,* 2011 WL 4501936 (D. Or. July 18, 2011) *10, "[a]lthough it is clear that [Plaintiff] disagrees with some of the medical decisions made by his care providers, and would have preferred a more aggressive diagnostic approach than that which his care providers adopted, such disagreements are insufficient as a matter of law to give rise to an Eighth Amendment claim," *citing Toguchi,* 391 F.3d at 1058.  Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim.

**D.    Plaintiff Has Not Established a Genuine Issue of Fact Sufficient to Support His Violation of Equal Protection Claim.**

Prisoners are protected under the Equal Protection Clause from invidious discrimination based on race. *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974); *Serrano v. Francis,* 345 F.3d 1071, 1082 (9th Cir. 2003). To make out a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class. *Serrano,* 345 F.3d at 1082, *citing Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998); *see also Reese v. Jefferson Sch. Dist. No. 14J,* 208 F.3d 736, 740 (9th Cir. 2000) (to succeed on an equal protection claim, plaintiff must prove that defendant "acted in a discriminatory manner and that the discrimination was intentional.") "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Serrano*, 345 F.3d at 1082, *quoting Maynard v. City of San Jose,* 37 F.3d 1396,

OPINION AND ORDER, Page 16

1404 (9th Cir. 1994) (emphasis in original). To avoid summary judgment on this claim, Plaintiff "must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence" that the medical decisions made by defendants were racially motivated. *Id.*

Plaintiff alleges in the complaint that he is African-American and that Defendants "acted in collusion" to deny Plaintiff the same diagnosis and treatment they would provide for "White inmates and others similar[ly] situated." Compl. ¶ 48. He alleges further that Defendants "have a long history of deliberate indifference to the serious health care need[s] of prisoners as well as racial and social class discrimination . . . ." *Id.* at ¶ 50. [6] In his Concise Statement of Fact ("CSF"), Plaintiff asserts: "The defendants have a long history of racial and social class discrimination." CSF ¶ 21. Plaintiff's equal protection claim is premised on the allegation that he is African-American and that Defendants have a long history of racial and social class discrimination and ignored Plaintiff's communications about what he believed was causing his back pain, what diagnostic tests were necessary, and what treatment would be most effective.

Plaintiff's allegations, however, are just that – allegations.  To avoid summary judgment, Plaintiff must "produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that [the] decision . . . was racially motivated." *Keyser v. Sacramento City Unified Sch. Dist.,* 265 F.3d 741, 754 (9th Cir. 2001) (alterations in original). This requires admissible evidence. Because Plaintiff has not produced evidence of discriminatory intent, he has not created a genuine issue of fact on whether Defendants' conduct violated the Equal Protection Clause. *Cf. Serrano,* 345 F.3d at 1083 (evidence of specific,

---

[6] The allegations in the Proposed Amended Complaint are identical except that they are numbered differently.

OPINION AND ORDER, Page 17

racially tinged remarks were sufficient to generate genuine issue of material fact on

discriminatory intent). Defendants, therefore, are entitled to summary judgment on Plaintiff's

Equal Protection claim.

**E.      Plaintiff Has Not Established a Genuine Issue of Fact Sufficient to Support His
         Grievance Procedures Claim.**

As count three of his complaint, Plaintiff alleges:

> The illegal practice of allowing persons to respond to grievance against doctors
> when they are incompetent, not managers and have no direct knowledge of the
> grieved incident. Their fraudulent misrepresentations of the facts, and refusal to
> process complaints is a form of harassment and deprived plaintiff of his right to
> redress wrongs perpetrated against him in violation of the 1st and 14th
> Amendments of the United States Constitution.

Compl. ¶ 53. To obtain a protectable right, an individual must have "a legitimate claim of

entitlement to it." *Mann v. Adams,* 855 F.2d 639, 6409 (9th Cir. 1988), *quoting Greenholtz v.*

*Inmates of Nebraska Penal and Correctional Complex,* 422 U.S. 1, 7 (1979). There is no

legitimate claim of entitlement to a grievance procedure. *Id.*; *Ramirez v. Galaza,* 334 F.3d 850,

860 (9th Cir. 2003) ("inmates lack a separate constitutional entitlement to a specific prison

grievance procedure"). Thus, Plaintiff has no constitutional claim based on alleged inadequacies

in the prison grievance procedure.

**F.      The State Defendants Are Entitled to Qualified Immunity.**

The threshold question in deciding a summary judgment motion based on qualified

immunity is whether, taken in the light most favorable to the party asserting injury, the facts

alleged show that the state actor's conduct violated a constitutional right. *Saucier v. Katz,* 533

U.S. 194, 201 (2001); *Billington v. Smith,* 292 F.3d 1177, 1183 (9th Cir. 2002). If there is no

violation of a constitutional right, there is no necessity for further inquiry. *Saucier,* 533 U.S. at

OPINION AND ORDER, Page 18

201. As discussed above, Plaintiff has not established that any of the Defendants violated a constitutional right. Accordingly, the individual Defendants are entitled to qualified immunity. individual State Defendants is not.

### G. Plaintiff Has Not Established a Genuine Issue of Fact Sufficient to Support His Negligence Claim.

In support of their motions for summary judgment, the State and County Defendants presented evidence from physicians, expressing the professional opinion that the diagnostic tests and treatment given to Plaintiff were customary and accepted in the community, including Defendants' use of x-rays, Defendants' reliance on diagnoses by radiologists and orthopedists, and Defendants' choices of medication. In addition, Defendants presented evidence that Plaintiff's nerve root compression was not apparent until 2010 and that Plaintiff at no time suffered from piriformus syndrome. Plaintiff has not submitted any evidence that rebuts any of these medical opinions or conclusions or any evidence to show that the medical treatment provided by any Defendant fell below the standard of care set forth in Or. Rev. Stat. §677.095(1).

Accordingly, the State and County Defendants are entitled to summary judgment in their favor on Plaintiff's negligence claim. In view of the conclusion that Plaintiff has failed to establish either a constitutional violation under 42 U.S.C. § 1983 or a negligence claim, the court finds it unnecessary to reach Defendants' remaining arguments that Plaintiff has not provided evidence that he exhausted his administrative remedies while in Multnomah County custody, that Plaintiff cannot recover anything beyond nominal damages, and that the Multnomah County Sheriff's Office is a department of Multnomah County, not a separate legal entity with the capacity to sue or be sued and, therefore, not a proper party.

OPINION AND ORDER, Page 19

**H.    Plaintiff's Motion to Strike Irrelevant Medical Information.**

Plaintiff moves to strike "irrelevant portions of his medical record" submitted on August

11, 2011 by Defendants' in support of their motion for summary judgment. In his declaration,

Plaintiff states that

> the 406 documents presented by Ms. Bandy is less that half [sic] of my medical
> records and 327 pages of the 406 presented are totally irrelevant. They have
> nothing to do with this law suit, my back injuries, complaints concerning sciatic
> nerve pain and the refusal to provide treatment.

Plaintiff's Declaration in Response to Records Specialist Barbara Bandy, Motion in Opposition

to Defendants Motion for Summary Judgment Ex. A-3 (Doc. # 142). *See also* Plaintiff's

Affidavit in Support of Motion to Strike (Doc. # 153). Some of the information presented by

Defendants is relevant to Plaintiff's claims.  Some of the information provided by Defendants,

however, is not relevant. The court has disregarded any medical records that are irrelevant to the

issues raised in this case. With regard to Plaintiff's medical records that are relevant to this case,

Plaintiff has waived any claim of medical privilege by filing this lawsuit. *See, e.g., Chambers v.*

*Burlington Northern R. Co.,* 1992 WL 310312 * 1 (D. Or. Oct. 16, 1992) (by raising issue of

medical condition in complaint, plaintiff waived physician-patient privilege under Oregon law);

*Tran v. Tyco Electronics Corp.* 2008 WL 2037279 * 2 (D. Or. May 7, 2008) (by placing medical

condition at issue, party waived psychotherapist-patient privilege). Accordingly, Plaintiff's

motion to strike is granted in part and denied in part.


**I.    Plaintiff's Motion to Amend Complaint.**

The district court has discretion to grant or deny leave to amend a pleading. *Zucco*

*Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 1007 (9th Cir. 2009). Under Rule 15(a) of the

OPINION AND ORDER, Page 20

Federal Rules of Civil Procedure, leave to amend a pleading "shall be freely given when justice so requires." The court need not, however, grant leave to amend where: (1) the amendment is the result of undue delay, bad faith, or dilatory motive on the part of the movant;  (2) the movant has repeatedly failed to cure deficiencies by amendments previously allowed;  (3) amendment would cause undue prejudice to the opposing party; or (4) amendment is futile. *Leadsinger, Inc. v. BMG Music Publishing,* 512 F.3d 522, 532 (9th Cir. 2008); *see also AmerisourceBergen Corp. v. Dialysist West, Inc.,* 465 F.3d 946, 951 (9th Cir. 2006). For the reasons stated above, the court concludes that Plaintiff's proposed amended complaint would not cure the legal and evidentiary deficiencies identified and, therefore, concludes that amendment is futile and denies Plaintiff's motion to amend.

**J.      Plaintiff's Motion for Audio-Visual or Telephone Conference.**

In light of the legal and evidentiary deficiencies identified above, the court concludes that there is no need for an audio-visual or telephone conference.  Plaintiff's motion, therefore, is denied.

OPINION AND ORDER, Page 21

## IV.  CONCLUSION

The County Defendants' motion for summary judgment (Doc. # 67) is GRANTED. The

State Defendants' motion for summary judgment (Doc. # 122) is GRANTED. Plaintiff's motion

to strike (Doc. # 152) is GRANTED in part and DENIED in part. Plaintiff's motion to amend the

complaint (Doc. # 89) is DENIED. Plaintiff's motion for an audio-visual or telephone conference

(Doc. # 159) is DENIED. This action is dismissed with prejudice.

IT IS SO ORDERED.

Dated this 3rd day of January, 2012.

<u>/s/ Michael H. Simon</u>
Michael H. Simon
United States District Judge